## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CATHY M. WILLIAMS, | ) | |
| | ) | |
| Claimant, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2:24-cv-555-CLS |
| | ) | |
| MICHELLE KING, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Cathy M. Williams commenced this suit pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security, affirming the decision of an Administrative Law Judge ("ALJ") and, thereby, denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and remanded to the Commissioner with an instruction to award benefits.

## I.  STANDARDS OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and, whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178 (11th Cir. 2011) (alteration supplied).

## II. CLAIMANT'S CONTENTIONS

The claimant, Cathy M. Williams, contends that the Commissioner's decision is neither supported by substantial evidence, nor in accordance with applicable legal standards. Specifically, she asserts that: (1) the ALJ did not comply with the mandate of the Appeals Council to employ a psychological expert; (2) the ALJ failed to evaluate properly the opinions of Marilyn Lachman, M.D.; (3) the ALJ's decision is not supported by substantial evidence; and (4) remand for an award of benefits is warranted.[1] Upon review of the record, the court concludes that those contentions have merit.

## III. PROCEDURAL BACKGROUND

This claim has remained unresolved for more than a decade. Claimant initially filed an application for a period of disability and disability insurance benefits on May

---

[1] Doc. no. 17 (Plaintiff's Opening Brief).

2

15, 2014.[2]  Following an administrative hearing, the ALJ issued an unfavorable

decision on August 2, 2016.[3]  Claimant requested review by the Appeals Council, but

review was denied on June 26, 2017.[4]  Claimant then appealed the decision to this

court.  On May 25, 2018, upon the motion of the Commissioner, the court reversed

the Commissioner's decision and remanded the case pursuant to sentence four of 42

U.S.C. § 405(g), for additional proceedings.  *See Williams v. Commissioner of Social

Security*, Civil Action No. 4:17-cv-1467-JHE (N.D. Ala. May 25, 2018).[5]  A new

hearing was conducted, after which, on August 6, 2019, the ALJ issued another

unfavorable decision.[6]

Claimant sought review of that decision by the Appeals Council, but, on May

15, 2020, the Appeals Council declined to assume jurisdiction.[7]  Claimant filed a civil

action, and this court affirmed the ALJ's decision on May 26, 2021.[8]  Claimant

appealed to the Eleventh Circuit.  The Commissioner's motion to remand the case to

the district court was granted by the Circuit on August 25, 2021.[9]  This court then

---

[2] R. 96.

[3] R. 23-37.

[4] R. 1-4.

[5] The order remanding the case is not contained in the record.

[6] R. 1262-88.

[7] R. 1252-55.

[8] R. 2014, 2016-28.

[9] R. 2030.

remanded the case to the Commissioner on August 30, 2021.[10]

The Appeals Council vacated the final decision of the Commissioner on November 16, 2021. In doing so, the Appeals Council observed that:

> The hearing decision indicates that the claimant has the residual functional capacity (RFC) to perform a reduced range of medium work, but the decision does not contain sufficient rationale with specific references to evidence of record in support of the assessed limitations. It is unclear how the ALJ determined the functional limitations resulting from the claimant's mental and physical impairments. The only opinion that the ALJ credits is from the State agency medical consultant, Robert Estock, M.D., who found there was insufficient evidence in the record to formulate an RFC for the period at issue. The Appeals Council notes, however, that a significant amount of evidence was offered into the record after Dr. Estock reviewed the record that may be used as the basis to formulate the claimant's RFC. Furthermore, the ALJ gave little weight to all the opinions from medical providers related to the claimant's mental condition. While an ALJ does not have to rely on opinion evidence to formulate the limitations in the RFC, he or she does have to provide a narrative discussion with cites to evidence in the record for how the restrictions were derived pursuant to Social Security Ruling 96-8p. The hearing decision does not contain such a narrative discussion for each of the physical and mental limitations, and therefore, it is unclear if more or less restrictive limitations are appropriate. *Thus, further consideration of the claimant's RFC is necessary, with medical expert and psychological or psychiatric expert evidence*.

R. 2035 (internal citations omitted, emphasis supplied). The ALJ was instructed by the Appeals Council to:

- Obtain evidence from a medical expert and psychological or psychiatric expert related to the nature and severity of and functional limitations resulting from the claimant's physical and

---

[10] R. 2032.

4

mental impairments (20 CFR 404.1513a(b)(2)).

- Give further consideration to the claimant's maximum RFC and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence, the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the *Dictionary of Occupational Titles* (DOT) and its companion publication, the *Selected Characteristics of Occupations* (Social Security Ruling 00-4p).

R. 2036.

Yet another administrative hearing was conducted by a different ALJ on April 12, 2022.[11] On the date of that hearing, however, the new ALJ had not obtained the medical and psychological evidence required by the Appeals Council's order of remand.[12] Notwithstanding, the ALJ heard claimant's testimony on her claim and posed questions based upon hypothetical work limitations to a vocational expert.[13]

---

[11] R. 1923-46.

[12] *See* R. 1928.

[13] R. 1943-44.

Following the hearing, the ALJ sent interrogatories to Nikerson Geneve, D.O., and Suzan M. Streichenwein, M.D.  However, the period specified for review by those experts was not complete.[14]  Specifically, the ALJ asked the medical experts to review claimant's medical records for slightly more than nine months (*i.e.*, the period of March 13 through December 31, 2013), but the relevant claim period was much longer — *i.e.*, September 22, *2011* through December 31, *2013*.  When the ALJ received the responses and realized the error, he requested medical and psychological evidence covering the entire claim period.[15]  Dr. Nikerson and Suniti Barua, Ph.D. responded to the interrogatories on October 3 and 13, 2022, respectively.[16]

The ALJ conducted a supplemental hearing on July 6, 2023;[17] and, on August 25, 2023, he issued a decision denying benefits.[18]  Claimant filed exceptions to the ALJ's decision with the Appeals Council on September 21, 2023.[19]  Those exceptions were rejected by the Appeals Council on March 1, 2024.[20]  Claimant filed the present action on May 2, 2024, seeking review of the Commissioner's decision.[21]

---

[14] R. 2874-81, 2882-86.

[15] R. 2915-26, 2932-42.

[16] R. 2945-59; 2962-69.

[17] R. 1884-1900.

[18] R. 2042-66.

[19] R. 2247-84.

[20] R. 1876-79.

[21] Doc. no. 1.

6

## IV.  DISCUSSION

Claimant contends that the ALJ violated the mandate of the Appeals Council that evidence be obtained from a psychological or psychiatric expert related to the nature and severity of, as well as the functional limitations resulting from, claimant's physical and mental impairments.  Primarily, claimant contends that the ALJ did not obey the mandate of the Appeals Council because "he did not employ a psychological expert to address the claims period."[22]

As described above, the ALJ initially obtained psychological evidence from Dr. Streichenwein for only part of the claims period.  Thereafter, he sent a new set of interrogatories to Dr. Barua, asking him to review claimant's mental health records for the entire claim period — *i.e.*, September 22, 2011 through December 31, 2013. The letter from the ALJ requesting Dr. Barua's review instructs him to "log into http://ssa.gov/ar/ to view the relevant exhibits which are shown in the exhibit list tab."[23]  The record does not indicate which exhibits were available for Dr. Barua's review on that website.  On the form provided for his responses, Dr. Barua wrote "[t]here are no mental health records in the requested time period."[24]

At a supplemental hearing conducted on July 6, 2023, the ALJ observed that

---

[22] Doc. no. 17 (Plaintiff's Opening Brief), at 24.

[23] R. 2961.

[24] R. 2965.

he had received the responses to the interrogatories covering the entire claim period, but that "actually the mental medical expert [Dr. Barua] wasn't very much help, [in that he] said we didn't give him enough information."[25]  Despite Dr. Barua's failure to provide a meaningful response to the interrogatories ordered by the Appeals Council, the ALJ proceeded to adjudicate the claim.

In the decision denying benefits, the ALJ gave Dr. Streichenwein's opinion partial weight.[26]  After discussing Dr. Streichenwein's report, the ALJ explained that:

> Dr. Streichenwein addressed an incorrect alleged onset date of disability and therefore her opinion only covers part of the period under consideration, but the opinions are still entitled to partial weight for the period they cover.  The opinions are consistent with the entire record and supported with examples.  While there may be discrepancies between the specific opinions and markings and the limitations reflected in the claimant's residual functional capacity, these discrepancies are based on my independent review, my consideration of the claimant's testimony, and all other evidence in the aggregate, some of which may not have been available to Dr. Streichenwein at the time of the expressed opinions.

R. 2063.  The court observes that Dr. Streichenwein's opinion covered only nine months of the actual two-year, three-month, and nine-day claim period from September 22, 2011 through December 31, 2013.

The ALJ addressed Dr. Barua's report as follows:

---

[25] R. 1888 (alterations supplied).

[26] R. 2063.

Suniti Barua, Ph.D., responded to medical interrogatories on October 13, 2022, indicating that there were no mental health records in the requested time period, citing to Exhibits B25F, B29F, B35F, B36F, B42F, and B54F, which addressed the time period 2014 through 2022. He reported that he was unable to determine the claimant's limitations during the period at issue because he had no information in the requested time period. He also stated that there was inadequate information. *His opinion is entitled to no weight, because the record does contain mental health records in the requested time period.*

R. 2063 (emphasis supplied).

Following review of the voluminous medical record, including the evidence obtained from medical and psychological experts after remand, the ALJ concluded that claimant was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date, September 22, 2011, through the date that she was last insured, December 31, 2013.[27]

The court concludes that the ALJ complied with the letter, but not the spirit, of the directive of the Appeals Council to obtain expert psychological evidence for the entire claim period. The court is concerned that there was mental health evidence in the record within the complete relevant time period, but it appears that it was not available for Dr. Barua's review. While the ALJ's effort to expedite resolution of this long-pending claim is commendable, he should have obtained expert psychological evidence for the *entire* claim period.

---

[27] R. 2066.

More importantly, however, the court concludes that the ALJ did not provide good cause for discounting evidence of claimant's mental health occupational limitations contained in the record. Social Security regulations provide that, when considering the weight to be given *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied).

In this case, there are "mental health source statements" from mental health practitioners who treated claimant during the relevant claim period of September 22, 2011 through March 31, 2013. As discussed below, each of those mental health source statements addresses claimant's work-related mental health limitations.

Marilyn Lachman, M.D., supplied two mental health source statements. In the first, dated June 12, 2017, Dr. Lachman indicated that claimant had the following symptoms of "depressive syndrome": depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; marked restriction in ability to understand, remember, or apply information; marked difficulties in ability to interact with others; marked difficulties in ability to concentrate, persist or maintain pace; and, marked limitation in ability to adapt or manage oneself.[28] Dr. Lachman noted that claimant also experienced distractibility.[29] Dr. Lachman also indicated that claimant suffered from an anxiety disorder, characterized by restlessness, being easily fatigued, difficulty concentrating, irritability, muscle tension, and sleep disturbance.[30] Claimant was noted to experience panic attacks followed by a persistent concern or

---

[28] R. 1232.

[29] *Id.*

[30] *Id.*

worry about additional panic attacks or their consequences and, disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of the home, or being in open spaces).[31]  Claimant also suffered from obsessive-compulsive disorder.[32]

Dr. Lachman opined, "based on [her] professional experience with [claimant]," that claimant could understand, remember or carry out very short and simple instructions, and maintain socially appropriate behavior and adhere to basic standard of neatness and cleanliness.[33]  Claimant could *not*: maintain attention, concentration, and/or pace for periods of at least two hours; perform activities within a schedule; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; or, interact with supervisors or co-workers.[34]  Dr. Lachman expected that claimant would be off-task eighty-five percent of an eight-hour day, and that she would fail to report to work due to her psychological symptoms on twenty-five to thirty days of a thirty-day period.[35]  She also noted sedation as a side effect of claimant's medications, but that it was "not present most of the time."[36]  Dr. Lachman

---

[31] *Id.*

[32] *Id.*

[33]R. 1233 (alterations supplied).

[34] *Id.*

[35] *Id.*

[36] *Id.*

stated that claimant's limitations existed as of March 21, 2013.[37]

Dr. Lachman provided a second "mental health status report" on July 10, 2017, noting the same limitations, except that she indicated that claimant could not maintain socially appropriate behavior or adhere to basic standards of neatness and cleanliness, but that she *could* adjust to routine and infrequent work changes.[38]  Additionally, Dr. Lachman opined that claimant is "unsafe in [the] workplace," and that she would be expected to fail to report to work more than twenty days of a thirty-day period.[39]  She answered the question whether claimant's limitations existed as of March 13, 2013 with the statement: "I don't think so, though [claimant] began [treatment] with me in 9/2013."[40]  She noted sedation and psychomotor slowing as side effects of claimant's medication.[41]  Dr. Lachman also provided a letter dated March 4, 2019, in which she stated:

> Ms. Cathy Williams is impaired because of her mental and emotional issues.  These have led to clinically significant distress and impairment in personal, social, occupational and other important areas of function. Ms. Cathy Williams's compensatory mechanisms have been poor, even with family support.  Ms. Cathy Williams is now at the point where the risk of her functioning in the occupational setting far

---

[37] Notably, that date corresponds with the incorrect date of the alleged onset of claimant's disability.

[38] R. 1733.

[39] *Id.*

[40] *Id.* (alterations supplied).

[41] *Id.*

outweighs the benefits.

Ms. Cathy Williams's psychiatric symptoms led to a marked, severe, and sometimes extreme degree of impairment in all areas related to occupational functioning. Ms. Cathy Williams is unable to work an eight hour day or even a four hour day. She is unable to perform routine work. She is unable to work with colleagues appropriately and unable to take orders from supervisors. She is unable to follow even simple and certainly complex directions. She is unable to adapt to changes in the work routine or the work environment. She is unable to interact appropriately with the public.

Ms. Cathy Williams is therefore unsafe and not able to function in the occupational setting. At this time, this patient is not able to enter the workforce in any capacity, including vocational rehabilitation.

R. 1873. The opinion itself does not explicitly relate to the relevant claim period of September 22, 2011 through December 31, 2013. However, on April 22, 2019, Dr. Lachman added a handwritten notation that "[i]t is my professional opinion that this impairment was prior to my initial psych evaluation on 10/25/2010."[42]

Kristy Phillips, a Licensed Clinical Social Worker, treated claimant during 2013,[43] and provided a mental health source statement, based upon her personal experience with claimant, on September 1, 2016.[44] Ms. Phillips indicated that claimant could understand, remember, or carry out very short and simple instructions, but could not maintain attention, concentration, and/or pace for periods of at least two

---

[42] R. 1874 (alteration supplied).

[43] R. 550-52.

[44] R. 1650, 1698 (there are duplicate copies of this document in the record).

14

hours; perform activities within a schedule; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; interact with supervisors or co-workers; maintain socially appropriate behavior; or adhere to basic standards of neatness and cleanliness.[45]  She expected claimant to be off-task fifty percent of an eight-hour day, and to fail to report to work because of her psychological symptoms twenty days out of a thirty-day period.  She opined that the limitations existed as of March 21, 2023.[46]

David Wilson, Ph.D., also provided a mental health source statement.[47]  Dr. Wilson indicated that claimant could not understand, remember, or carry out very short and simple instructions; maintain attention, concentration and/or pace for periods of at least two hours; perform activities within a schedule; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; respond appropriately to criticism from supervisors; interact appropriately with co-workers; maintain socially appropriate behavior; or adhere to basic standards of neatness and cleanliness.[48]  He stated that claimant's limitations existed as of March 21, 2013, and that side effects of her medications were "possibly sedation."  He

---

[45] *Id.*

[46] This date was printed on the form that Ms. Phillips completed, and she indicated her agreement by circling "yes."

[47] R. 1219.

[48] R. 1219.

prepared the statement on April 14, 2016 — beyond the relevant claim period.
However, he reviewed claimant's medical records from the claim period, noting that
she had been diagnosed with agoraphobia with panic and obsessive-compulsive
disorder, and depressive disorder.   Dr. Wilson performed cognition and memory
screening, as well as a pain profile, which indicated clinically significant levels of
depression and anxiety.   He summarized his conclusions as follows:

> Cathy presented as a confused, perplexed, highly depressed and anxious
> individual.   She has multiple medical problems and issues, and she
> needs further assessment of the meningioma in her left frontal area —
> she believes it is affecting her vision.   I was very concerned about her
> level of confusion, and the extreme difficulty she had answering
> questions which should not have been difficult for a high school
> graduate — she has severe cognitive and memory deficits.   She would
> have a great deal of difficulty maintaining any type of job.   Her ability
> to withstand the pressures of day to day occupational functioning is
> highly impaired.   She is not capable of managing benefits.

R. 1217-18.

In this case, the opinions of the treating mental health sources describing
claimant's mental health and occupational limitations are largely consistent.   Again,
the opinions suffer from the defect that they relate to only a portion of the relevant
claim period — i.e., beginning March 21, 2013, rather than the actual alleged date of
onset of September 22, 2011.   With the exception of Dr. Wilson's opinion, the mental
health source opinions are based on the practitioner's personal experience treating

claimant during the relevant period. Dr. Wilson's opinion has value, however, as he reviewed claimant's medical records for the claim period, and evaluated her in person, even though after the claim period expired. The ALJ rejected each of those opinions as being prepared outside of the claim period, and as inconsistent with other medical records. The ALJ did not explain the inconsistencies he alleges to have perceived, and he did not take into account that the mental health source statements assessed claimant's mental health *occupational limitations*, whereas other medical records relating to claimant's mental health *treatment* did not. Accordingly, the court concludes that the ALJ did not provide good cause for discounting the mental health source opinions of claimant's work-related limitations.

Additionally, the ALJ improperly accorded partial weight to the opinion of Dr. Streichenwein, who was asked to assess only the period of March 21, 2013 through December 31, 2013.[49] In the portion of her opinion addressing claimant's limitations in a work setting, Dr. Streichenwein concluded that claimant has no limitations in the areas of "understanding, remembering, or applying information," "interacting with others," or "adapting or managing oneself," and a mild limitation in the area of "concentrating, persisting, or maintaining pace."[50] Even so, as support for that

---

[49] R. 2901.

[50] R. 2903.

opinion, she cites medical records which post-date the period of time that she was asked to evaluate. Specifically, she relies on medical records from: the Department of Veterans Affairs, dated March 28, 2022;[51] Premier Medical Group, dated November 2, 2021;[52] and, a discharge summary from Tennova Healthcare Hospital, dated January 21, 2021, which does not address claimant's mental health status.[53] Dr. Streichenwein's opinion on claimant's occupational mental health limitations should not have been credited at all, because it does not relate even to the shortened, incorrect claim period for which her expert opinion was sought.

Based upon the weight he accorded the medical evidence of claimant's impairments, the ALJ determined claimant's residual functional capacity to be as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except she can never climb ladders, ropes, or scaffolds. She can occasionally reach overhead, but otherwise frequently reach bilaterally. She cannot be exposed to excessive vibration. She can never be exposed to workplace hazards such as moving mechanical parts and high exposed places. She can understand, remember, and carry out detailed, but not complex instructions. She cannot perform work requiring a specific production rate, such as assembly line work, or work that requires hourly quotas. She can tolerate occasional interaction with

---

[51] R. 2844, 2849, 2851-52.

[52] R. 2821-22.

[53] R. 2688.

the public, and occasional interaction with coworkers and supervisors.
She can deal with occasional changes in the work setting.

R. 2050.  The RFC is consistent with hypothetical work limitation questions posed

to the vocational expert during the hearing conducted on July 6, 2023.[54]  However,

when the ALJ added a limitation that the hypothetical worker would miss work four

days a month, or be off task twenty percent or more each workday, the VE affirmed

that those additional limitations would preclude employment.[55]  Upon questioning by

claimant's attorney, the VE testified that employment also would be precluded for an

individual who was unable to maintain attention, concentration, persistence, or pace

for any period of two hours or more, or who was unable to interact with coworkers

or supervisors.[56]

This court concludes, that because the ALJ did not provide good cause for

rejecting the opinions of Dr. Lachman, Ms. Phillips, and Dr. Wilson with respect to

claimant's mental health occupational limitations, and because the testimony of the

vocational expert confirms that, if their opinions had been credited, claimant would

be precluded from employment, the ALJ's decision denying benefits is not supported

by substantial evidence.

---

[54] R. 1896.

[55] R. 1897.

[56] R. 1898.

Normally, the proper course of action would be to remand the claim to the Commissioner for further proceedings. Here, however, the court concludes that remand would not serve the interests of justice. Claimant has been waiting for resolution of her claim for more than a decade. She has had three administrative hearings. She has sought review of the Commissioner's decision in this court three times. She has sought review in the Eleventh Circuit Court of Appeals. On two occasions, once before this court and also before the Eleventh Circuit, the Commissioner asked that the case be remanded for further action, thereby acknowledging an error in the decision. Despite the clear directive of the Appeals Council to the ALJ in the present action to obtain expert psychological evidence for the claim period, the Commissioner still could not get it right. As another judicial officer in this District once observed, "there is a point at which continued delay becomes unjust. That point has been reached." *Perez v. Colvin*, 214 F. Supp. 3d. 1200, 1215 (N.D. Ala. 2016).

A court "may remand . . . the case for an entry of an order awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Those circumstances are present here. The ALJ improperly discounted the medical evidence relating to

20

claimant's work-related limitations during the claim period, and the vocational testimony demonstrated that, with consideration of those limitations, claimant was unable to perform any type of work.

Accordingly, the decision of the Commissioner is due to be reversed, and remanded with an instruction to award benefits.  A separate order consistent with this memorandum opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** this 7th day of February, 2025.

_____
Senior United States District Judge